UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                             Case No. 15-20317

PIERRE LIVINGSTON,                            HON. AVERN COHN

    Defendant.

_____/

## OPINION AND ORDER DENYING DEFENDANT'S MOTION TO WITHDRAW GUILTY PLEA (Doc. 671)

### I.    INTRODUCTION

This is a criminal case. Defendant Pierre Livingston (Livingston) was one of 24 defendants to be indicted on controlled substance, firearm, and animal fighting charges (Doc. 22). Of those, 21 defendants pled guilty, one was murdered, and one was convicted at trial. On July 17, 2017, Livingston pled guilty pursuant to a Rule 11 plea agreement to one count of Conspiracy to Possess with Intent to Distribute Controlled Substances in violation of 21 U.S.C. §§ 846 & 841(a)(1), and one count of Conspiracy to Attend an Animal Fighting Venture in violation of 18 U.S.C. § 371 and 7 U.S.C § 2156(a). The Court accepted the plea and found it free and voluntary. (See Doc. 651).

On December 11, 2017, the parties and the Court held a status conference on the record in which Livingston said that he wanted new counsel and to withdraw his guilty plea. (Doc. 670). He obtained new counsel and has now filed a motion to

withdraw guilty plea (Doc. 671) to which the government has responded (Doc. 680). For the reasons that follow, Livingston's motion is denied.

## II. BACKGROUND

The statement of facts from the government's response brief reads as follows:

> The Grand Jury indicted Pierre Livingston along with twenty-three co-defendants on July 29, 2015 in the Second Superseding Indictment. That indictment charged Livingston, in count one, with Conspiracy to Possess with Intent to Distribute Controlled Substances. Over 500 grams or more of a mixture and substance containing a detectable amount of cocaine and 28 grams or more of a mixture and substance containing a detectable amount of cocaine base were attributed to Livingston. As a result, Livingston faced a 5-year mandatory minimum sentence with a 40-year statutory maximum sentence. The Second Superseding Indictment also charged Livingston in Count Five, Conspiracy to Sponsor and Exhibit an Animal Fighting Venture, and to Buy/Sell, Deliver, Possess, Train, and Transport Animals for Participation in an Animal Fighting Venture.
>
> The Court divided the defendants into three trial groups; Livingston was part of Trial Group B. Defendants pleaded guilty at different times as the case progressed. Ultimately, only one defendant in Trial Group A, Erik Carter, went to trial and was convicted by jury on count one on March 3, 2017. (R.474, Jury Verdict Form Erik Carter). The Court set the Group B jury trial for August 7, 2017, with a plea cutoff of June 1. (R. 489, Notice to Appear as to Group B).
>
> The government and Livingston had engaged in plea negotiations throughout the case. The government proposed Rule 11 agreements as far back as April 15, 2016. On May 10, 2017, the government proposed a Rule 11 agreement substantially similar to the one that Livingston eventually agreed to on July 17. In its email accompanying the Rule 11 the government detailed the parameters of the plea and what the government believed it could prove if the case proceeded to trial. (Exhibit A)
>
> First, in the current Fourth Superseding Indictment (R.373, filed July 13, 2016), Livingston's Rule 11 offer carried the 5-year mandatory minimum with a conservative guideline estimate of 2667 grams of cocaine and 43 grams of cocaine base. Second, the attorneys for both parties believed Livingston qualified for a potential Safety Valve sentence with guidelines of 37 months at the bottom. Third, without Safety Valve, the only offer the government could make was 5-years incarceration. Finally, that the government believed that the evidence at trial will show that the defendant conspired to distribute over 5 kilograms of cocaine. Therefore, if the defendant rejected the plea, the government intended to seek the Fifth Superseding Indictment with charges in accordance with the evidence to be presented at trial.

Livingston appeared for pre-trial conference on June 12, 2017. (Minute entry dated June 12, 2017). Livingston rejected the Rule 11 offer. His attorney at the time, Cena White, requested the Court extended the plea cutoff to July 17, 2017, three weeks before trial. The Court also set a pretrial conference for the same date. (R. 538, Notice to Appear, Pierre Livingston). The Grand Jury returned the Fifth Superseding Indictment on June 22, 2017, charging Livingston with conspiring to possess with intent to distribute over 5 kilograms or more of a mixture and substance containing a detectable amount of cocaine, carrying a 10-year mandatory minimum sentence. On July 17, 2017, Livingston negotiated the elimination of two sentences in the dogfighting factual basis. He then pleaded guilty to the Rule 11 plea agreement (R. 553); with the lower penalties under count one in the Second Superseding Indictment, 40-year maximum and a 5-year mandatory minimum. The Rule 11 stated, "the court must sentence the defendant to a mandatory minimum sentence of 60 months unless the Court finds that the defendant qualifies for a sentence below this mandatory minimum under the safety valve, 18 U.S.C. § 3553(f)." (*Id.,* PgID 1835) Rule 11 also stated, "The defendant acknowledges that the decision of whether or not the defendant is eligible for the safety valve will be made by the court and a finding that the defendant does not qualify is not a basis to withdraw from the instant Rule 11 agreement." (*Id.,* PgID 1837)

United States Probation interviewed Livingston in preparation of the Presentence Investigation Report. Probation's report, dated September 5, 2017, determined that Livingston did not qualify for sentencing under Safety Valve. (Presentence Investigation Report, ¶94) Unbeknownst to the government or Livingston's attorney, Livingston was convicted for Possession with Intent to Distribute Cocaine in the Eastern District of Michigan on August 3, 2001, and sentenced to incarceration and supervised release. He completed the supervised release in 2004. (*Id.*, ¶45)

On December 11, 2017 . . . Livingston stated that he wished to withdraw his plea.

(Doc. 680).

### III. LEGAL STANDARD

Federal Rule of Criminal Procedure 11 provides that:

(d) A defendant may withdraw a plea of guilty or nolo contendere:
   . . .
    (2) after the court accepts the plea, but before it imposes sentence if:
      (A) the court rejects a plea agreement under 11(c)(5); or
      (B) the defendant can show a fair and just reason for requesting the withdrawal.

Fed. R. Crim. P. 11(d). Further, "[a] defendant does not have an absolute right to withdraw a guilty plea and bears the burden of proving that he is entitled to withdraw his guilty plea." United States v. Ellis, 470 F.3d 275, 280 (6th Cir. 2006) (citing United States v. Mader, 251 F.3d 1099, 1105 (6th Cir. 2001)). The Sixth Circuit has established a seven-factor test for evaluating whether a defendant should be allowed to withdraw a guilty plea:

> (1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which the defendant has had prior experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted.

United States v. Benton, 639 F.3d 723, 727 (6th Cir. 2011) (quoting United States v. Bashara, 27 F.3d 1174, 1181 (6th Cir.1994))

## IV.  ANALYSIS

### A.  Overview

Livingston says his plea should be withdrawn because he made it "out of duress," which is a "fair and just reason" under Rule 11(d)(2)(B). Livingston's testimony at the December 11, 2017 status conference was the following:

> I signed this plea deal out of duress. I didn't want to do this. I explained to her the date after I signed it that this is not what I want to do, but I asked her to file motions and she didn't. We just can't agree, and I just feel like this is not the best thing for me and I just want to do what's best for me. This is my life on the line and . . . . I want a fair shot at it. That's all I want, and I don't feel like I'm getting it.

(Doc. 670, p. 3).

The government says that Livingston's claim of duress is too vague to qualify as a "fair and just reason."

4

## B. <u>Benton</u> Factors

**i. The amount of time that elapsed between the plea and the motion to withdraw it**

Livingston says that his position is distinguishable from the defendant's position in <u>Benton</u> because Livingston waited almost five months to move to withdraw his plea, while the <u>Benton</u> defendant waited only one month. This argument only harms Livingston, as the <u>Benton</u> court held that one month was too long to wait to move to withdraw a plea. <u>Benton</u>, 639 F.3d at 727.

On the other hand, the government points to numerous cases standing for the proposition that motions to withdraw a guilty plea should be denied if not made promptly. In those cases, courts rejected time frames that were even shorter than the time frame here. <u>See, e.g.</u>, <u>United States v. Haygood</u>, 549 F.3d 1049, 1053 (6th Cir. 2008) (over four months); <u>United States v. Spencer</u>, 836 F.2d 236, 239 (6th Cir. 1987) (five weeks); <u>United States v. Goldberg</u>, 862 F.2d 101, 104 (6th Cir. 1988) (55 days); <u>United States v. Baez</u>, 87 F.3d 805, 808 (6th Cir. 1996) (67 days). Therefore, this factor weighs in favor of the government.

**ii. The presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings**

Livingston says that the reason he did not move to withdraw earlier was because he was in conflict with his attorney for two years. He cites the following testimony from the December 11, 2017 status conference:

> I can't get on the same page with my attorney. We have been going back and forth for over two years. A few months ago - this is not what I wanted to do. I did not want to do this plea, I wanted to go to court, but we cannot get on the same page. So I feel like I need better representation, somebody to go to court with me that I'm satisfied with. I haven't been satisfied for two years.

5

(Doc. 670, p. 2). Further, he says he did not know at the time of the plea hearing that he would not be eligible for the Safety Valve sentencing reduction, and he would face harsher punishments for withdrawing his plea.

The government says that Livingston waited to move to withdraw his plea until after the Probation Department issued its Presentence Investigation Report showing that he would not be given a lesser Safety Valve sentence. This shows that the motion is a strategic move, not an expression of previous duress.

This factor weighs in favor of the government. The plea agreement contained a provision that stated "The defendant acknowledges that the decision of whether or not the defendant is eligible for the safety valve will be made by the Court and a finding that the defendant does not qualify is not a basis to withdraw from the instant Rule 11 agreement." (Doc. 553, PgID 1837). The fact that Livingston is displeased with his likely sentence is insufficient to warrant granting of the motion since "the aim of the rule is to allow a hastily entered plea made with unsure heart and confused mind to be undone, not to allow a defendant to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes he made a bad choice in pleading guilty." Benton, 639 F.3d at 727 (quoting Bashara, 27 F.3d at 1181). Additionally, though Livingston could have requested new counsel at any time, he has not explained why he waited months to do so.

### iii. Whether the defendant has asserted or maintained his innocence

Livingston says that he "has indicated that he is not guilty of all of the counts presently charged." He cites nothing in the record to support this assertion.

The government points to the fact that Livingston at the status conference said that the plea was "not the best thing for me," not that he was innocent of the charges. This language evidences a strategic motive, and Livingston has not described in what manner he has "indicated" his innocence. Thus, this factor also weighs in favor of the government.

### iv. The circumstances underlying the entry of the guilty plea

Livingston says that he "has indicated on the record that he made an ill-advised decision 'under duress' based on the pressures of what would happen to him otherwise, which included, in his mind immediate detention and subsequent imprisonment." (Doc. 671).

The government says that Livingston had over two months to think about this plea agreement, and had similar plea offers for over 15 months. Lawyer or family pressure, or fear of being convicted, do not amount to duress. United States v. Evans, 406 F. App'x 946, 950 (6th Cir. 2011); United States v. Gasaway, 437 F. App'x 428, 435 (6th Cir. 2011). Further, Livingston's previous lawyer stated at the December 11, 2017 status conference that "[a]t the time of the plea I will indicate that I had previously brought Mr. Livingston into my office, and this was his decision, not mine, to tender a plea." (Doc. 670).

This factor also weighs in favor of the government. A defendant deciding whether to accept a plea agreement must always weigh as a factor the fear of being detained and incarcerated. Experiencing such a fear does not equate to being coerced. United States v. Evans, 406 F. App'x 946, 950 (6th Cir. 2011) ("Faced with the possibility of life imprisonment if convicted, defendant doubtless experienced considerable stress and

7

anxiety, but this is not the sort of 'coercion' that undermines the voluntariness or integrity of his plea."). See also Chaffin v. Stynchcombe, 412 U.S. 17, 31 (1973) ("Although every such circumstance [the potential to face a higher sentence absent a plea] has a discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices was upheld as an inevitable attribute of any legitimate system which tolerates and encourages the negotiation of pleas.").

### v. The defendant's nature and background

Livingston says that he is high-school educated, has strong community connections, and continues to strive for better employment. The government says that Livingston's level of education supports that he made a knowing, voluntary choice when he pled guilty. The Court agrees with the government.

### vi. The degree to which the defendant has had prior experience with the criminal justice system

The government points out that Livingston previously pled guilty in the Eastern District of Michigan to Possession with Intent to Distribute Cocaine. He also pled guilty in the Third Circuit Court of Michigan to Attempted Attending an Animal Fight. Both of those felony convictions are for charges similar to what he pled to in this case.

Livingston admitted that his criminal history was accurately described by the government. Thus, this factor also favors the government. Having pled to similar charges in the past, including one in the Eastern District of Michigan, Livingston was familiar with the decision-making process and consequences surrounding a guilty plea.

### vii. Potential prejudice to the government if the motion to withdraw is granted

Since all other factors favor the government, it is not necessary to reach the question of whether Livingston's withdrawal would prejudice the government. Benton, 639 F.3d at 729.

## V. CONCLUSION

Because no factor weighs in Livingston's favor, his motion is DENIED.

SO ORDERED.

        s/Avern Cohn
        AVERN COHN
        UNITED STATES DISTRICT JUDGE

Dated: April 30, 2018
Detroit, Michigan